UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TATYANA SIZYUK, | ) |
| | ) |
| Plaintiff. | ) |
| v. | ) CAUSE NO: 4:20-cv-00075 |
| | ) |
| PURDUE UNIVERSITY; | ) |
| BOARD OF TRUSTEES OF | ) |
| PURDUE UNIVERSITY; and | ) |
| SEUNGJIN KIM and MAMORU | ) |
| ISHII, in their personal capacities; | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### I. Nature of the Case.

Pursuant to Fed. R. Civ. P 15(a)(1)(B), this Amended Complaint is being filed within 21 days of Defendants' Answers. Defendant Seungjin Kim filed his responsive pleading on November 18, 2020. Pursuant to Fed. R. Civ. P. 15(c), this Amended Complaint relates back to the date of original filing by Plaintiff, and it moots Defendant Kim's Motion for Judgment on the Pleadings. Plaintiff, Tatyana Sizyuk ("Dr. Sizyuk" and/or "Plaintiff"), brings this amended action against Purdue University, Board of Trustees of Purdue University, ("Purdue") pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et. seq.* ("Title VII") alleging discrimination on the basis of race, color, sex, national origin, and retaliation. Dr. Sizyuk brings this amended action against Seungjin Kim ("Dr. Kim") and Mamoru Ishii ("Dr. Ishii) in their personal capacities pursuant to 42 U.S.C. § 1983, alleging race and gender discrimination.

### II. Parties.

1. Dr. Sizyuk, at all times relevant to this action, has resided within the geographical

boundaries of the Northern District of Indiana, Lafayette Division.

2. Purdue resides and/or maintains one or more offices in and conducted business in the Northern District of Indiana, Lafayette Division, at all relevant times.

3. Dr. Kim and Dr. Ishii have, at all relevant times to this action, resided and/or worked within the geographical boundaries of the Northern District of Indiana, Lafayette Division.

### III. Jurisdiction and Venue.

4. Purdue is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

5. Dr. Sizyuk is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6. Dr. Sizyuk satisfied her obligation, if any, to exhaust her administrative remedies. Having timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and after receiving her Notice of Suit Rights, Dr. Sizyuk brings this original action within ninety (90) days of her receipt thereof.

7. Dr. Kim is a "person" under 42 U.S.C. § 1983.

8. Dr. Ishii is a "person" under 42 U.S.C. § 1983.

9. Dr. Kim and Dr. Ishii, under color of law, violated Dr. Sizyuk's clearly established constitutional rights under the Fourteenth Amendment's Equal Protection Clause.

10. Federal question jurisdiction is conferred on this Court by 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1331.

11. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Northern District of Indiana, Lafayette Division. Thus, venue is proper in this Court.

## IV.  Factual Allegations

12. Dr. Sizyuk, a Caucasian female, was born in Belarus.  Dr. Sizyuk's native language is Russian and Belarusian.  Dr. Sizyuk immigrated to the United States in 2002 and became a U.S. Citizen in 2015.

13. Dr. Sizyuk commenced her employment with Purdue in or around 2007 as a Research Scientist/non-tenure track faculty member.

14. In or around 2014, Dr. Sizyuk started as a tenure-track faculty member in the School of Nuclear Engineering, College of Engineering.

15. The vast majority of faculty are men and a substantial number of the Nuclear Engineer population are Asian.

16. Dr. Kim, an Asian male, has been a tenured faculty member and Head of the Department at all relevant times.

17. Dr. Ishii, an Asian male, has been a tenured faculty member and has, at all relevant times, yielded substantial influence and power over the Nuclear Engineering Primary Tenure Committee ("NEPC").  Dr. Ishii openly politics, and at times has even threatened, other NEPC members to vote his way on tenure decisions of applicants.

18. In or around January of 2019, Dr. Sizyuk, along with some other employees, signed and submitted a complaint that accused management in the School of Nuclear Engineering of discrimination and bias.

19. Dr. Sizyuk's complaint constitutes protected activity under Title VII.

20. In response, Purdue sent evaluation surveys to the faculty and promised that the results would be discussed in the beginning of the fall semester of 2019.  However, the results of the surveys were not shared until December of 2019 (after Dr. Sizyuk was denied tenure), and

the results showed the lowest rated working atmosphere in the history of the School of Nuclear Engineering.  Purdue promised to meet with each faculty member to discuss these issues and possible remedies, but Purdue never held any such meeting with Dr. Sizyuk.

21. On or about October 1, 2019, Purdue denied Dr. Sizyuk's application for tenure.

22. Dr. Kim caused the denial of tenure.  Dr. Kim was personally involved in the deprivation of Dr. Sizyuk's constitutional rights.  Because Dr. Sizyuk is a female, along with not being affiliated with the Asian race/culture/ethnicity/national origin, Dr. Kim caused the denial of tenure.  Dr. Kim influenced others to vote to deny Dr. Sizyuk tenure because of her gender, race, ethnicity, and/or national origin.  Dr. Kim tainted the tenure deliberation process of Dr. Sizyuk by wrongly accusing her of fraudulently obtaining her doctorate in Poland, misrepresenting her work history as a scientist at ANL, and by soliciting negative reference letters to use against Dr. Sizyuk, all for the purpose of denying her tenure because of her gender, race, ethnicity, and/or national origin.  Dr. Kim held Dr. Sizyuk to a higher and more onerous tenure standard compared to similarly situated individuals outside of her protected classes.  Dr. Kim recommended against Dr. Sizyuk's tenure and evaluated her negatively because of her gender, race, ethnicity, and/or national origin.  Further, Dr. Kim, as the Head of the Department, had the ability to overrule the NEPC vote or move her case to the college level committee, but chose not to overrule the recommendation because of her gender, race, ethnicity, and/or national origin.  Dr. Kim knew that Dr. Sizyuk's records, achievement, performance, and overall qualifications for tenure equaled and/or exceeded those Asians and/or men who have already been granted tenure status at the School of Nuclear Engineering.

23. Dr. Ishii caused the denial of tenure.  Dr. Ishii was personally involved in the deprivation of Dr. Sizyuk's constitutional rights.  Because Dr. Sizyuk is a female, along with not

being affiliated with the Asian race/culture/ethnicity/national origin, Dr. Ishii caused the denial of tenure.  Dr. Ishii voted to deny Dr. Sizyuk tenure because of her gender, race, ethnicity, and/or national origin.  Dr. Ishii influenced, forced, and/or threatened others to vote to deny Dr. Sizyuk tenure because of her gender, race, ethnicity, and/or national origin.  Dr. Ishii influenced Dr. Kim not to exercise his power to overrule the committee recommendation.  Dr. Ishii tainted the tenure deliberation process of Dr. Sizyuk by wrongly accusing her of fraudulently obtaining her doctorate in Poland, misrepresenting her work history as a scientist at ANL, and by soliciting negative reference letters to use against Dr. Sizyuk, all for the purpose of denying her tenure because of her gender, race, ethnicity, and/or national origin.  Dr. Ishii held Dr. Sizyuk to a higher and more onerous tenure standard compared to similarly situated individuals outside of her protected classes.  Dr. Ishii recommended against Dr. Sizyuk's tenure and evaluated her negatively because of her gender, race, ethnicity, and/or national origin.  Dr. Ishii knew that Dr. Sizyuk's records, achievement, performance, and overall qualifications for tenure equaled and/or exceeded those Asians and/or men who have already been granted tenure status at the School of Nuclear Engineering.

24. The denial of tenure results in, among other things, loss of job security, loss of financial income, and results in Dr. Sizyuk's employment ending with Purdue after the spring semester of 2021.

25. At the time of denial, Purdue did not provide a reason for the denial of tenure and Purdue refused to put its alleged rationale in writing.

26. The decision-maker(s), the majority of whom are Asian men, behind Dr. Sizyuk's denial of tenure, have exhibited stereotypical bias against Caucasians and/or women.  By way of example and not limitation:

      (a) NEPC member Dr. Ishii has openly stated that women are "stupid," and they are only hired in higher positions in the U.S. because it is required;

      (b) Dr. Ishii has openly stated that Caucasians are "lazy" and "stupid," and advocated for hiring Chinese applicants because a Chinese employee would work "20 hours a day," not 20 hours per week (per the job posting);

      (c) NEPC member Dr. Choi, an Asian male, has been accused of sexual harassment and/or gender discrimination multiple times by other women (approximately six);

      (d) NEPC member Dr. Kim has openly stated in 2017 that Dr. Sizyuk will never be promoted, immediately after joining Purdue (Summer 2017) and without reviewing her credentials.

      (e) Dr. Kim, a former student of Dr. Ishii, has been aware of the sexist and racist comments made by Dr. Ishii, failed to take remedial action, and condoned and permitted a discriminatory and hostile work environment against Caucasians and/or women.

    27.    Numerous other me-too Caucasian and/or female comparators have been denied tenure in recent years by the same main decision-makers, in spite of their qualifications and work experience.  This includes, but is not limited to, Dr. Wharry, Dr. Bean, Dr. Garner (who was reinstated after initial denial), Dr. Miloshevsky, and Dr. Valeryi Sizyuk.  During the last three (3) years, while Dr. Kim has been the Head, one (1) Asian applicant has been hired while six (6) non-Asian Caucasians and/or women have been denied tenure.

    28.    Purdue has openly treated Asian men, such as Yunlin Xu, more favorably in spite of lesser qualifications.  Dr. Kim hired Yunlin Xu as an Assistant Professor, tenure track, knowing that Yunlin Xu did not possess the necessary qualifications.  Indeed, many faculty members openly criticized his performance, credentials, achievements, and qualifications, yet Dr. Kim and Dr. Ishii exerted their power and influence and hired this lesser qualified applicant over the objections of others.  Dr. Kim also recently hired Yi Xie, an Asian female Assistant Professor, tenure track.  Under Dr. Kim's leadership as Head, two (2) females (including

6

Plaintiff) and five (5) Caucasian men have been denied tenure, while two (2) tenure track Asians have been hired.

29. Dr. Sizyuk's non-affiliation with the Asian race/culture/ethnicity/national origin, along with being a female, negatively impacted her ability to obtain tenure. Had Dr. Sizyuk been Asian and/or male, Purdue would have granted her application for tenure.

30. More than two (2) months after denial of tenure, and only as a result of Dr. Sizyuk's EEOC charge, internal appeal, and public records request, Purdue finally placed its alleged rationale in writing.

31. In sum, Purdue's alleged reason is that Dr. Sizyuk allegedly failed to emerge fully from her former advisor's research group.

32. This alleged rationale is pretextual, without any factual basis, and Dr. Sizyuk was more than qualified and eligible for tenure. By way of example and not limitation:

> (a) this alleged rationale was never discussed with Dr. Sizyuk during deliberations and prior to denial of her tenure;
>
> (b) instead, the deliberations with her focused on allegations that she fraudulently obtained her doctorate in Poland, and that she misrepresented her work history as a scientist at ANL;
>
> (c) while Dr. Sizyuk was busy defending herself against these false, defamatory, and discriminatory/stereotypical allegations of this nature, she was never asked to explain how she has fully emerged from her research advisor;
>
> (d) Dr. Sizyuk has 65 publications, eight (8) of which are completely independent of her former advisor, four (4) of which she is the sole author, and eighteen (18) publications as the first author. This is several *more* than the number of comparable publications by already-tenured faculty members in this school.
>
> (e) Per Purdue's policies, three (3) categories dominate the issue of tenure: (1) discovery, (2) learning, and (3) scholarly engagement. In April of 2019, just a few months prior to being denied tenure, Dr. Kim (Head) executed an evaluation of Dr. Sizyuk that rated her as "Very Good" under discovery, "Excellent" under learning, and "Satisfactory" for engagement.

(f) Dr. Sizyuk earned two (2) major grants without her former research advisor (DOE and NRC).  Dr. Sizyuk submitted six (6) proposals for grants during one year without her former research advisor.  On February 6, 2020, KLA visited with Dr. Sizyuk to discuss collaboration and additional funding, again outside of her former advisor.  Currently, Samsung is negotiating with Dr. Sizyuk to fund her research because of her unique international experience.

(g) Dr. Sizyuk has served as the mentor to three (3) graduated PhD students, one (1) graduated master's student, and a fourth PhD student who will graduate in the summer of 2020.  This is more than several faculty who are already tenured in this school.  Dr. Sizyuk was also a member of seven (7) PhD and MS thesis defense committees in NE and Purdue University.

(h) Independent of her former advisor, Dr. Sizyuk was a Session Organizer, Chair, and Scientific Secretary at international conferences and workshops (IEEE ICOPS and EUVL Intl. Expert Workshop).  Dr. Sizyuk was a panelist of National Science Foundation's Review Panel, she was an elected member of the PSAC Executive Committee of IEEE Nuclear and Plasma Science Society, she has given numerous invited talks at international conferences and workshops, and she was a Senior member of two large engineering societies (IEEE and SPIE), which further demonstrates her international experience.

33.  Indeed, in many areas Dr. Sizyuk is more qualified than similarly situated Asians and/or men who have already been granted tenure in the School of Nuclear Engineering.

34.  Dr. Sizyuk has been and continues to injured and harmed by Defendants' discriminatory, retaliatory, unconstitutional, and/or unlawful actions.

## V.  Legal Causes of Action

### COUNT I – RACE, COLOR, SEX, NATIONAL ORIGIN DISCRIMINATION – PURDUE TITLE VII

35.  Plaintiff hereby incorporates paragraphs one (1) through thirty-four (34) of her Complaint herein.

36.  Purdue denied Dr. Sizyuk's application for tenure because of her race, color, sex, and/or national origin.

37.  Purdue's unlawful actions were intentional, willful, and done in reckless disregard of Dr. Sizyuk's legally protected rights under Title VII.

38. Dr. Sizyuk has suffered damages as a result of this unlawful conduct.

## COUNT II – RETALIATION – PURDUE TITLE VII

39. Plaintiff hereby incorporates paragraphs one (1) through thirty-eight (38) of her Complaint herein.

40. Dr. Sizyuk engaged in protected activity under Title VII.

41. Purdue denied Dr. Sizyuk's application for tenure in retaliation for her protected activity.

42. Purdue's actions were intentional, willful, and done in reckless disregard of Dr. Sizyuk's rights.

43. Dr. Sizyuk has suffered damages as a result of Purdue's unlawful conduct.

## COUNT III – 42 U.S.C. § 1983 – AGAINST DR. KIM AND DR. ISHII – PERSONAL CAPACITY CLAIMS

44. Plaintiff hereby incorporates paragraphs one (1) through forty-three (43) of her Complaint herein.

45. Dr. Sizyuk, as an employee of a state governmental entity, enjoys constitutional rights under the Fourteenth Amendment, in particular equal protection under the law.

46. Dr. Kim and Dr. Ishii, in their personal capacities and under color of law, violated Dr. Sizyuk's clearly established constitutional rights of equal protection by discriminating and denying her tenure based upon her race and/or gender.

47. Dr. Sizyuk has suffered damages as a result of the unlawful conduct of Dr. Kim and Dr. Ishii.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Dr. Sizyuk, by counsel, requests that this Court find for her and Order that:

1. Purdue rescind its denial of tenure, grant tenure, instate Plaintiff as a tenured faculty member in the School of Nuclear Engineering;

2. Defendants pay to Plaintiff all of her lost wages and benefits;

3. Defendants pay to Plaintiff compensatory and emotional pain and suffering damages;

4. Defendants Dr. Kim and Dr. Ishii pay to Plaintiff punitive damages;

5. Defendants pay Plaintiff any additional lost wages, bonuses, compensation, and monetary loss suffered as a result of Defendants' unlawful actions;

6. Defendants pay to Plaintiff pre- and post- judgment interest;

7. Defendants pay Plaintiff's reasonable costs and attorney fees incurred in litigating this; and,

8. Defendants pay to Plaintiff any and all other damages and/or relief deemed appropriate and just by this Court, including equitable and legal relief.

Respectfully submitted,

*s/ Ryan P. Sink*
Ryan P. Sink (27350-29)
FOX & SINK, LLC
6177 North College Avenue
Indianapolis, IN 46220

rsink@fwslegal.com
Telephone:  317-254-8500

**DEMAND FOR JURY TRIAL**

The Plaintiff, Dr. Sizyuk, by counsel, respectfully requests a jury trial as to all

issues deemed triable.

*s/ Ryan P.Sink*
Ryan P. Sink

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 9th day of December, 2020, by the Court's electronic filing system to the following counsel of record:

William P. Kealey: wpk@stuartlaw.com
Sarah N. Dimmich: snd@stuartlaw.com
Matthew M. Humble: mmh@stuartlaw.com
Candace A. Bankovich: cbankovich@lewiswagner.com
Janelle P. Kilies: jkilies@lewiswagner.com

*/s/ Ryan P. Sink*
Ryan P. Sink
