UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

TATYANA SIZYUK )
)
Plaintiff, )
) CAUSE NO.: 4:20-cv-00075-TLS-JPK
v. )
)
PURDUE UNIVERSITY, BOARD OF )
TRUSTEES OF PURDUE UNIVERSITY, )
SEUNGJIN KIM and MAMOUR ISHII, in )
their personal capacities, )
)
Defendants. )

**DEFENDANT DR. MAMORU ISHII'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant Dr. Mamoru Ishii ("Dr. Ishii"), by counsel, hereby submits his answers and affirmative defenses to Plaintiff's Amended Complaint as follows:

## I. NATURE OF THE CASE

[Unnumbered paragraph] Plaintiff, Tatyana Sizyuk ("Dr. Sizyuk" and/or "Plaintiff"), brings this amended action against Purdue University, Board of Trustees of Purdue University, ("Purdue") pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et. seq*. ("Title VII") alleging discrimination on the basis of race, color, sex, national origin, and retaliation. Dr. Sizyuk brings this amended action against Seungjin Kim ("Dr. Kim") and Mamoru Ishii ("Dr. Ishii) in their personal capacities pursuant to 42 U.S.C. § 1983, alleging race and gender discrimination.

**Answer:** **Admitted that Plaintiff purports to state claims against Purdue under Title VII and that Plaintiff purports to state claims against Drs. Kim and Dr. Ishii under 42 U.S.C. § 1983. Dr. Ishii denies the remaining allegations in this paragraph.**

## I. Parties.

1. Dr. Sizyuk, at all times relevant to this action, has resided within the geographical boundaries of the Northern District of Indiana, Lafayette Division.

**ANSWER: Dr. Ishii has insufficient information to admit or deny the allegations of Paragraph 1 of Plaintiff's Amended Complaint and, therefore, denies the same.**

2. Purdue resides and/or maintains one or more offices in and conducted business in the Northern District of Indiana, Lafayette Division, at all relevant times.

**ANSWER: Dr. Ishii admits the allegations in Paragraph 2 of Plaintiff's Amended Complaint.**

3. Dr. Kim and Dr. Ishii have, at all relevant times to this action, resided and/or worked within the geographical boundaries of the Northern District of Indiana, Lafayette Division.

**ANSWER: Dr. Ishii admits that Dr. Ishii has resided in and works with the geographical boundaries of the Northern District of Indiana. Dr. Ishii has insufficient information to admit or deny the remaining allegations of Paragraph 3 of Plaintiff's Amended Complaint and, therefore, denies the same.**

## II. Jurisdiction and Venue.

4. Purdue is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

**ANSWER: Dr. Ishii admits the allegations in Paragraph 4 of Plaintiff's Amended Complaint.**

5. Dr. Sizyuk is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

**ANSWER: Dr. Ishii admits the allegations in Paragraph 5 of Plaintiff's Amended Complaint.**

6. Dr. Sizyuk satisfied her obligation, if any, to exhaust her administrative remedies. Having timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and after receiving her Notice of Suit Rights, Dr. Sizyuk brings this original action within ninety (90) days of her receipt thereof.

**ANSWER: Dr. Ishii admits that Plaintiff filed a Charge with the EEOC on or about November 12, 2019, and that Plaintiff received a Dismissal and Notice of Rights letter from the EEOC on or about August 7, 2020. Dr. Ishii denies the remaining allegations in paragraph 6 of Plaintiff's Amended Complaint.**

7. Dr. Kim is a "person" under 42 U.S.C. § 1983.

**ANSWER: Dr. Ishii admits that Dr. Kim, in his individual capacity only, is a "person" under 42 U.S.C. § 1983. Dr. Ishii denies the remaining allegations in paragraph 7 of Plaintiff's Amended Complaint.**

8. Dr. Ishii is a "person" under 42 U.S.C. § 1983.

**ANSWER: Dr. Ishii admits that Dr. Ishii, in his individual capacity only, is a "person" under 42 U.S.C. § 1983. Dr. Ishii denies the remaining allegations in paragraph 8 of Plaintiff's Amended Complaint.**

9. Dr. Kim and Dr. Ishii, under color of law, violated Dr. Sizyuk's clearly established constitutional rights under the Fourteenth Amendment's Equal Protection Clause.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 9 of Plaintiff's Amended Complaint.**

10. Federal question jurisdiction is conferred on this Court by 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1331.

**ANSWER: Dr. Ishii denies that this Court has federal question jurisdiction over this matter. Dr. Ishii denies the remaining allegation of paragraph 10 of Plaintiff's Amended Complaint and this Court has subject matter jurisdiction.**

11. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Northern District of Indiana, Lafayette Division. Thus, venue is proper in this Court.

**ANSWER: Dr. Ishii admits that venue is proper.**

## III. Factual Allegations

12. Dr. Sizyuk, a Caucasian female, was born in Belarus. Dr. Sizyuk's native language

is Russian and Belarusian. Dr. Sizyuk immigrated to the United States in 2002 and became a U.S. Citizen in 2015.

**ANSWER: Upon information and belief, Dr. Ishii admits that Plaintiff identifies as female and reports her country of origin as Belarus. Dr. Ishii is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 12 of Plaintiff's Complaint.**

13. Dr. Sizyuk commenced her employment with Purdue in or around 2007 as a Research Scientist/non-tenure track faculty member.

**ANSWER: Dr. Ishii admits that Plaintiff was hired by Purdue in or around 2007 as an Associate Research Scientist. Dr. Ishii further states that Plaintiff's position upon hire at Purdue was a staff position, not a faculty position. Dr. Ishii denies the remaining allegations in paragraph 13 of Plaintiff's Amended Complaint.**

14. In or around 2014, Dr. Sizyuk started as a tenure-track faculty member in the School of Nuclear Engineering, College of Engineering.

**ANSWER: Dr. Ishii admits that Plaintiff was hired by Purdue in or around 2014 as an Assistant Professor in the School of Nuclear Engineering, College of Engineering. Admitted that upon hire Plaintiff was a probationary faculty member who was hired as a tenure-track faculty member. Dr. Ishii denies the remaining allegations in paragraph 14 of Plaintiff's Amended Complaint.**

15. The vast majority of faculty are men and a substantial number of the Nuclear Engineer population are Asian.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 15 of Plaintiff's Amended Complaint.**

16. Dr. Kim, an Asian male, has been a tenured faculty member and Head of the Department at all relevant times.

**ANSWER: Dr. Ishii admits that Dr. Kim is a male of Asian descent and has been a tenured professor at Purdue and the Head of the School of Nuclear Engineering since 2017.**

17. Dr. Ishii, an Asian male, has been a tenured faculty member and has, at all relevant

times, yielded substantial influence and power over the Nuclear Engineering Primary Tenure Committee ("NEPC"). Dr. Ishii openly politics, and at times has even threatened, other NEPC members to vote his way on tenure decisions of applicants.

**ANSWER: Dr. Ishi admits that he is a male of Asian descent, a tenured faculty member at Purdue, and a member of the Nuclear Engineering Primary Committee ("NEPC"). Dr. Ishii denies the remaining allegations in paragraph 17 of Plaintiff's Amended Complaint.**

18. In or around January of 2019, Dr. Sizyuk, along with some other employees, signed and submitted a complaint that accused management in the School of Nuclear Engineering of discrimination and bias.

**ANSWER: Dr. Ishii admits that Plaintiff was among those whose signatures appeared on a January 2019 document styled a "Vote of No Confidence." Dr. Ishii denies the remaining allegations in paragraph 18 of Plaintiff's Amended Complaint.**

19. Dr. Sizyuk's complaint constitutes protected activity under Title VII.

**ANSWER: Dr. Ishii admits that participation in the January 2019 document styled a "Vote of No Confidence" is protected activity. Dr. Ishii denies the remaining allegations in paragraph 19 of Plaintiff's Amended Complaint.**

20. In response, Purdue sent evaluation surveys to the faculty and promised that the results would be discussed in the beginning of the fall semester of 2019. However, the results of the surveys were not shared until December of 2019 (after Dr. Sizyuk was denied tenure), and the results showed the lowest rated working atmosphere in the history of the School of Nuclear Engineering. Purdue promised to meet with each faculty member to discuss these issues and possible remedies, but Purdue never held any such meeting with Dr. Sizyuk.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 20 of Plaintiff's Amended Complaint.**

21. On or about October 1, 2019, Purdue denied Dr. Sizyuk's application for tenure.

**ANSWER: Dr. Ishii admits that on or around October 1, 2019, a majority of the**

**School of Nuclear Engineering's Primary Committee ("NEPC") voted against Plaintiff's application for tenure. Dr. Ishii further states that Plaintiff subsequently requested a formal review by the Office of the Provost of the NEPC's decision, which decision was reviewed and upheld.**

22. Dr. Kim caused the denial of tenure. Dr. Kim was personally involved in the deprivation of Dr. Sizyuk's constitutional rights. Because Dr. Sizyuk is a female, along with not being affiliated with the Asian race/culture/ethnicity/national origin, Dr. Kim caused the denial of tenure. Dr. Kim influenced others to vote to deny Dr. Sizyuk tenure because of her gender, race, ethnicity, and/or national origin. Dr. Kim tainted the tenure deliberation process of Dr. Sizyuk by wrongly accusing her of fraudulently obtaining her doctorate in Poland, misrepresenting her work history as a scientist at ANL, and by soliciting negative reference letters to use against Dr. Sizyuk, all for the purpose of denying her tenure because of her gender, race, ethnicity, and/or national origin. Dr. Kim held Dr. Sizyuk to a higher and more onerous tenure standard compared to similarly situated individuals outside of her protected classes. Dr. Kim recommended against Dr. Sizyuk's tenure and evaluated her negatively because of her gender, race, ethnicity, and/or national origin. Further, Dr. Kim, as the Head of the Department, had the ability to overrule the NEPC vote or move her case to the college level committee, but chose not to overrule the recommendation because of her gender, race, ethnicity, and/or national origin. Dr. Kim knew that Dr. Sizyuk's records, achievement, performance, and overall qualifications for tenure equaled and/or exceeded those Asians and/or men who have already been granted tenure status at the School of Nuclear Engineering.

**ANSWER: Dr. Ishii admits that Dr. Kim, as the Head of the School of Nuclear Engineering, is empowered to overrule NEPC recommendations as to whether a candidate's application should proceed to the School of Engineering's Area Promotions Committee. Further, Dr. Ishii admits that Dr. Kim concurred with the NEPC's assessment and recommendation regarding Plaintiff. Dr. Ishii denies the remaining allegations in paragraph 22 of Plaintiff's Amended Complaint.**

23. Dr. Ishii caused the denial of tenure. Dr. Ishii was personally involved in the deprivation of Dr. Sizyuk's constitutional rights. Because Dr. Sizyuk is a female, along with not being affiliated with the Asian race/culture/ethnicity/national origin, Dr. Ishii caused the denial of tenure. Dr. Ishii voted to deny Dr. Sizyuk tenure because of her gender, race, ethnicity, and/or national origin. Dr. Ishii influenced, forced, and/or threatened others to vote to deny Dr. Sizyuk tenure because of her gender, race, ethnicity, and/or national origin. Dr. Ishii influenced Dr. Kim not to exercise his power to overrule the committee recommendation. Dr. Ishii tainted the tenure deliberation process of Dr. Sizyuk by wrongly accusing her of fraudulently obtaining her doctorate in Poland, misrepresenting her work history as a scientist at ANL, and by soliciting negative reference letters to use against Dr. Sizyuk, all for the purpose of denying her tenure because of her gender, race, ethnicity, and/or national origin. Dr. Ishii held Dr. Sizyuk to a higher and more onerous tenure standard compared to similarly situated individuals outside of her protected classes. Dr. Ishii recommended against Dr. Sizyuk's tenure and evaluated her negatively because of her gender, race, ethnicity, and/or national origin. Dr. Ishii knew that Dr. Sizyuk's records, achievement, performance, and overall qualifications for tenure equaled and/or exceeded those Asians and/or men who have already been granted tenure status at the School of Nuclear Engineering.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 23 of Plaintiff's Amended Complaint.**

24. The denial of tenure results in, among other things, loss of job security, loss of financial income, and results in Dr. Sizyuk's employment ending with Purdue after the spring semester of 2021.

**ANSWER: Dr. Ishii admits that Plaintiff's employment with Purdue will end after the 2020-2021 academic year due to Plaintiff's failure to obtain tenure. Dr. Ishii**

**denies the remaining allegations in paragraph 24 of Plaintiff's Amended Complaint.**

25. At the time of denial, Purdue did not provide a reason for the denial of tenure and Purdue refused to put its alleged rationale in writing.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 25 of Plaintiff's Amended Complaint.**

26. The decision-maker(s), the majority of whom are Asian men, behind Dr. Sizyuk's denial of tenure, have exhibited stereotypical bias against Caucasians and/or women. By way of example and not limitation:

> (a) NEPC member Dr. Ishii has openly stated that women are "stupid," and they are only hired in higher positions in the U.S. because it is required;
>
> (b) Dr. Ishii has openly stated that Caucasians are "lazy" and "stupid," and advocated for hiring Chinese applicants because a Chinese employee would work "20 hours a day," not 20 hours per week (per the job posting);
>
> (c) NEPC member Dr. Choi, an Asian male, has been accused of sexual harassment and/or gender discrimination multiple times by other women (approximately six);
>
> (d) NEPC member Dr. Kim has openly stated in 2017 that Dr. Sizyuk will never be promoted, immediately after joining Purdue (Summer 2017) and without reviewing her credentials.
>
> (e) Dr. Kim, a former student of Dr. Ishii, has been aware of the sexist and racist comments made by Dr. Ishii, failed to take remedial action, and condoned and permitted a discriminatory and hostile work environment against Caucasians and/or women.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 26 of Plaintiff's Amended Complaint.**

27. Numerous other me-too Caucasian and/or female comparators have been denied tenure in recent years by the same main decision-makers, in spite of their qualifications and work experience. This includes, but is not limited to, Dr. Wharry, Dr. Bean, Dr. Garner (who was reinstated after initial denial), Dr. Miloshevsky, and Dr. Valeryi Sizyuk. During the last three (3)

years, while Dr. Kim has been the Head, one (1) Asian applicant has been hired while six (6) non-Asian Caucasians and/or women have been denied tenure.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 27 of Plaintiff's Amended Complaint.**

28. Purdue has openly treated Asian men, such as Yunlin Xu, more favorably in spite of lesser qualifications. Dr. Kim hired Yunlin Xu as an Assistant Professor, tenure track, knowing that Yunlin Xu did not possess the necessary qualifications. Indeed, many faculty members openly criticized his performance, credentials, achievements, and qualifications, yet Dr. Kim and Dr. Ishii exerted their power and influence and hired this lesser qualified applicant over the objections of others. Dr. Kim also recently hired Yi Xie, an Asian female Assistant Professor, tenure track. Under Dr. Kim's leadership as Head, two (2) females (including Plaintiff) and five (5) Caucasian men have been denied tenure, while two (2) tenure track Asians have been hired.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 28 of Plaintiff's Amended Complaint.**

29. Dr. Sizyuk's non-affiliation with the Asian race/culture/ethnicity/national origin, along with being a female, negatively impacted her ability to obtain tenure. Had Dr. Sizyuk been Asian and/or male, Purdue would have granted her application for tenure.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 29 of Plaintiff's Amended Complaint.**

30. More than two (2) months after denial of tenure, and only as a result of Dr. Sizyuk's EEOC charge, internal appeal, and public records request, Purdue finally placed its alleged rationale in writing.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 30 of Plaintiff's Amended**

**Complaint.**

31. In sum, Purdue's alleged reason is that Dr. Sizyuk allegedly failed to emerge fully from her former advisor's research group.

**ANSWER: Dr. Ishii admits that Plaintiff's failure to demonstrate independence from her former research advisor was one reason cited. Dr. Ishii denies the remaining allegations in paragraph 31 of Plaintiff's Amended Complaint.**

32. This alleged rationale is pretextual, without any factual basis, and Dr. Sizyuk was more than qualified and eligible for tenure. By way of example and not limitation:

(a) this alleged rationale was never discussed with Dr. Sizyuk during deliberations and prior to denial of her tenure;

(b) instead, the deliberations with her focused on allegations that she fraudulently obtained her doctorate in Poland, and that she misrepresented her work history as a scientist at ANL;

(c) while Dr. Sizyuk was busy defending herself against these false, defamatory, and discriminatory/stereotypical allegations of this nature, she was never asked to explain how she has fully emerged from her research advisor;

(d) Dr. Sizyuk has 65 publications, eight (8) of which are completely independent of her former advisor, four (4) of which she is the sole author, and eighteen (18) publications as the first author. This is several *more* than the number of comparable publications by already-tenured faculty members in this school.

(e) Per Purdue's policies, three (3) categories dominate the issue of tenure: (1) discovery, (2) learning, and (3) scholarly engagement. In April of 2019, just a few months prior to being denied tenure, Dr. Kim (Head) executed an evaluation of Dr. Sizyuk that rated her as "Very Good" under discovery, "Excellent" under learning, and "Satisfactory" for engagement.

(f) Dr. Sizyuk earned two (2) major grants without her former research advisor (DOE and NRC). Dr. Sizyuk submitted six (6) proposals for grants during one year without her former research advisor. On February 6, 2020, KLA visited with Dr. Sizyuk to discuss collaboration and additional funding, again outside of her former advisor. Currently, Samsung is negotiating with Dr. Sizyuk to fund her research because of her unique international experience.

(1) Dr. Sizyuk has served as the mentor to three (3) graduated PhD students, one graduated master's student, and a fourth PhD student who will graduate in the

summer of 2020. This is more than several faculty who are already tenured in this school. Dr. Sizyuk was also a member of seven (7) PhD and MS thesis defense committees in NE and Purdue University.

(g) Independent of her former advisor, Dr. Sizyuk was a Session Organizer, Chair, and Scientific Secretary at international conferences and workshops (IEEE ICOPS and EUVL Intl. Expert Workshop). Dr. Sizyuk was a panelist of National Science Foundation's Review Panel, she was an elected member of the PSAC Executive Committee of IEEE Nuclear and Plasma Science Society, she has given numerous invited talks at international conferences and workshops, and she was a Senior member of two large engineering societies (IEEE and SPIE), which further demonstrates her international experience.

**ANSWER: Dr. Ishii denies as to the first sentence of paragraph 32 of Plaintiff's Amended Complaint, and that any subpart of paragraph 32 is an "example" showing that any stated rationale for the denial of Plaintiff's application for tenure is or was "pretextual" or "without any factual basis." Dr. Ishii is without knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 32 and, therefore, denies the same.**

33. Indeed, in many areas Dr. Sizyuk is more qualified than similarly situated Asians and/or men who have already been granted tenure in the School of Nuclear Engineering.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 33 of Plaintiff's Amended Complaint.**

34. Dr. Sizyuk has been and continues to injured and harmed by Defendants' discriminatory, retaliatory, unconstitutional, and/or unlawful actions.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 34 of Plaintiff's Amended Complaint.**

## IV. Legal Causes of Action

## COUNT I – RACE, COLOR, SEX, NATIONAL ORIGIN DISCRIMINATION – PURDUE TITLE VII

35. Plaintiff hereby incorporates paragraphs one (1) through thirty-four (34) of her Complaint herein.

**ANSWER: Dr. Ishii incorporates by reference his answers to the foregoing**

**paragraphs.**

36. Purdue denied Dr. Sizyuk's application for tenure because of her race, color, sex, and/or national origin.

**ANSWER: Count I is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

37. Purdue's unlawful actions were intentional, willful, and done in reckless disregard of Dr. Sizyuk's legally protected rights under Title VII.

**ANSWER: Count I is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

38. Dr. Sizyuk has suffered damages as a result of this unlawful conduct.

**ANSWER: Count I is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

**COUNT II – RETALIATION – PURDUE TITLE VII**

39. Plaintiff hereby incorporates paragraphs one (1) through thirty-eight (38) of her Complaint herein.

**ANSWER: Dr. Ishii incorporates by reference his answers to the foregoing paragraphs.**

40. Dr. Sizyuk engaged in protected activity under Title VII.

**ANSWER: Count II is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

41. Purdue denied Dr. Sizyuk's application for tenure in retaliation for her protected

activity.

**ANSWER: Count II is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

42. Purdue's actions were intentional, willful, and done in reckless disregard of Dr. Sizyuk's rights.

**ANSWER: Count II is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

43. Dr. Sizyuk has suffered damages as a result of Purdue's unlawful conduct.

**ANSWER: Count II is not stated against Dr. Ishii in his individual capacity. Dr. Ishii is not named in this suit in any other capacity. As such, no response is required from Dr. Ishii as to the foregoing paragraph.**

**COUNT III – 42 U.S.C. § 1983 – AGAINST DR. KIM AND DR. ISHII – PERSONAL CAPACITY CLAIMS**

44. Plaintiff hereby incorporates paragraphs one (1) through forty-three (43) of her Complaint herein.

**ANSWER: Dr. Ishii incorporates by reference his answers to the foregoing paragraphs.**

45. Dr. Sizyuk, as an employee of a state governmental entity, enjoys constitutional rights under the Fourteenth Amendment, in particular equal protection under the law.

**ANSWER: Dr. Ishii admits the allegations in Paragraph 45 of Plaintiff's Amended Complaint.**

46. Dr. Kim and Dr. Ishii, in their personal capacities and under color of law, violated Dr. Sizyuk's clearly established constitutional rights of equal protection by discriminating and denying her tenure based upon her race and/or gender.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 46 of Plaintiff's Amended Complaint.**

47. Dr. Sizyuk has suffered damages as a result of the unlawful conduct of Dr. Kim and Dr. Ishii.

**ANSWER: Dr. Ishii denies the allegations in Paragraph 47 of Plaintiff's Amended Complaint.**

## VI. Requested Relief

[Unnumbered "wherefore" paragraph] Wherefore, Plaintiff, Dr. Sizyuk, by counsel, requests that this Court find for her and Order that:

1. Purdue rescind its denial of tenure, grant tenure, instate Plaintiff as a tenured faculty member in the School of Nuclear Engineering;

2. Defendants pay to Plaintiff all of her lost wages and benefits;

3. Defendants pay to Plaintiff compensatory and emotional pain and suffering damages;

4. Defendants Dr. Kim and Dr. Ishii pay to Plaintiff punitive damages;

5. Defendants pay Plaintiff any additional lost wages, bonuses, compensation, and monetary loss suffered as a result of Defendants' unlawful actions;

6. Defendants pay to Plaintiff pre- and post- judgment interest;

7. Defendants pay Plaintiff's reasonable costs and attorney fees incurred in litigating this; and,

8. Defendants pay to Plaintiff any and all other damages and/or relief deemed appropriate and just by this Court, including equitable and legal relief.

**ANSWER: Denied. Dr. Ishii expressly denies that Plaintiff should take anything by way of her Amended Complaint.**

## AFFIRMATIVE DEFENSES

Without assuming any burden, he would not otherwise bear, Defendant Dr. Ishii asserts the following Affirmative Defenses:

1. Plaintiff fails to state a claim upon which relief may be granted.

2. The Eleventh Amendment bars Plaintiff's claims under Section 1983 for official-capacity conduct.

3. Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages, if any, were caused by Plaintiff's own actions or inactions.

4. Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages, if any, were caused by the acts or omissions of third parties whose acts or omissions were not reasonably foreseeable.

5. Plaintiff has failed to mitigate damages claimed in this action, and Plaintiff's damages, if any, must be diminished accordingly.

6. Plaintiff's unclean hands render her ineligible for injunctive relief.

7. To the extent that Plaintiff's claims are time-barred by limitations, laches, or applicable law, Dr. Ishii pleads this defense.

8. Some or all of Plaintiff's claims are barred by the equitable doctrines of waiver or estoppel.

9. The act of voting on an application for academic tenure is protected First Amendment speech.

10. The alleged acts and/or omissions of Dr. Ishii were in furtherance of his right of free speech under the Constitution of the United States and/or the Constitution of the State of

Indiana in connection with a public issue, namely scholarly opinion regarding Plaintiff's scholarly record, taken in good faith and with a reasonable basis in law and fact. I.C. § 34-7-7-5.

11. Plaintiff's claims against Dr. Ishii are barred by qualified immunity.

12. Dr. Ishii did not act for the purpose of causing injury to Plaintiff, in deliberate disregard of Plaintiff's rights, or with malice or reckless indifference to Plaintiff's rights, and thus Plaintiff may not recover punitive damages.

13. Plaintiff's claims are barred, in whole or part, by the applicable statute(s) of limitations, by the applicable doctrines of laches, waiver, estoppel, and/or illegality.

14. Plaintiff's claims are barred, in whole or in part, to the extent he lacks standing to pursue the claims alleged against Defendant.

15. Plaintiff's claims are barred, in whole or in part, by his failure to comply with the Indiana Tort Claims Act.

16. Plaintiff's claims are barred, in whole or part, by Indiana's Anti-SLAPP Act, Ind. C §§ 34-7-7-1 *et seq.* 8.

17. Any statements and comments made by Defendant about Plaintiff were made by Defendant with good motive and were fair comments made as private citizens exercising his right of free speech, discussing matters of public importance, as concerned citizens of the community.

18. The matters addressed by Defendant and Plaintiff's activities concern matters that affect the interest of the general public. These statements were made in good faith with the proper motives of informing the public. Therefore, the Defendant's statements are protected by both qualified and conditional privilege.

19. The action brought by Plaintiff is a SLAPP suit precluded by Ind. Code § 34-7-7-1, and Defendant is thus entitled to an award of reasonable attorneys' fees.

20. No act or omission on the part of Defendant either caused or contributed to whatever injury (if any) the Plaintiff may have sustained.

21. The Defendant's statements are not properly subject to a slander suit because they contained no provably false assertions of fact and are in-actionable opinions.

22. Plaintiff's claims are barred because truth is a complete defense to defamation. A statement alleged made that is alleged to be false but true is in-actionable.

23. Plaintiff's claims are barred, in whole or in part, because the Court lacks subject matter jurisdiction.

## RESERVATION OF DEFENSES

Dr. Ishii hereby gives notice that he intends to rely upon such other affirmative defense as may become available or apparent during the course of investigation, discovery, or trial; and Defendant reserves the right to amend its Answer to assert such other defenses to which it may entitled.

WHEREFORE, the Defendants Dr. Ishii prays that Plaintiff take nothing by way of her Complaint, for judgment in favor of Defendant Dr. Ishii and against the Plaintiff, an award of costs and attorneys' fees, and for all other just and proper relief.

## JURY DEMAND

Defendant Dr. Mamoru Ishii, by counsel, respectfully demands that the above matter be tried by a jury pursuant to Trial Rule 38(B) of the Indiana Rules of Trial Procedure.

Respectfully submitted,

*/s/ Candace Bankovich*

Candace Bankovich (Atty. No. 19259-49)
Janelle P. Kilies (Atty No. 30708-49)
LEWIS WAGNER, LLP
Suite 200
501 Indiana Avenue
Indianapolis, IN 46202
Phone: 317.237.0500
Fax: 317.630.2790
Email cbankovich@lewiswagner.com
jkilies@lewiswagner.com
***Attorneys for Defendant Dr. Mamoru Ishii***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2020, a copy of the foregoing was served on the following parties electronically by using the Court's IEFS System and U.S. Postal Service, pre-paid delivery for those parties not yet registered:

Ryan P. Sink
FOX WILLIAMS & SINK, LLC
6177 North College Ave.
Indianapolis IN 46220
rsink@fwslegal.com
***Counsel for Plaintiff***

William P. Kealey
Matthew M. Humble
Sarah D. Dimmich
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
wpk@stuartlaw.com
mmh@stuartlaw.com
snd@stuartlaw.com
***Counsel for Defendants Purdue University, Board of Trustees of Purdue University, and Seungjin Kim***

*s/ Candace Bankovich*
CANDACE BANKOVICH

LEWIS WAGNER, LLP
Suite 200
501 Indiana Avenue
Indianapolis, IN 46202
Telephone: 317-237-0500
Facsimile: 317-630-2790
cbankovich@lewiswagner.com