UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TATYANA SIZYUK, <br> Plaintiff, <br> <br> vs. <br> <br> PURDUE UNIVERSITY; BOARD OF TRUSTEES OF PURDUE UNIVERSITY; and SEUNGJIN KIM and MAMORU ISHII, in their personal capacities, <br> Defendants. | CAUSE NO: 4:20-cv-00075-TLS |

### DR. SEUNGJIN KIM'S
### REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant Seungjin Kim ("Dr. Kim") submits this Reply in Support of his Motion for Summary Judgment (ECF No. 62). Because Plaintiff's claim against Dr. Kim fails as a matter of law, and because Plaintiff's Response (ECF No. 67) fails to establish any triable question as to her claim against Dr. Kim, Dr. Kim is entitled to summary judgment.

#### REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Consistent with the principles outlined in *United States v. Torres*, 170 F.3d 749 (7th Cir. 1999), Dr. Kim incorporates by reference the entirety of Purdue's Reply to Plaintiff's Statement of Additional Material Facts (ECF No. 74-1) as if fully stated herein. Plaintiff's Responses to Statements of Material Fact are identical as to Purdue and Dr. Kim. *Compare* ECF No. 66-1 *with* ECF No. 67-1. Likewise, Plaintiff's Statements of Additional Material Facts are identical as to all Defendants, though the paragraphs are numbered differently in the filing respective

to Defendant Mamoru Ishii. *Compare* ECF No. 66-1 ¶¶ 97-228 *and* ECF No. 67-1 ¶¶ 97-228 *with* ECF No. 68-1 ¶¶ 4-135.

Dr. Kim likewise incorporates the exhibits as designated in Purdue University's Supplemental Index of Exhibits (ECF No. 74-2) and as appended thereto (ECF No. 74-3 through -5).

## MOTION TO STRIKE

As above, Dr. Kim further incorporates by reference Purdue's motion to strike Plaintiff's Responses to Statements of Material Fact, as contained in Purdue's Reply in Support of its Motion for Summary Judgment ("Purdue's Reply") (ECF No. 74 pp. 1-2), and as further described in the Reply to Plaintiff's Statement of Additional Material Facts, as if fully stated herein. Dr. Kim joins in Purdue's arguments and for those reasons likewise joins in Purdue's request that the following be stricken: (i) all of Plaintiff's Responses to Statements of Material Facts relative to Dr. Kim's and Purdue's motions for summary judgment (ECF Nos. 66-1 and 67-1); (ii) paragraphs 101-102, 107, 109-148, 152, 154, 157-160, 165-171, 173, 177-178, 181, 183, 191-194, 198-200, 203-208, 209b-211, 213-214, 216, and 220-222 of Plaintiff's Statements of Additional Material Facts relative to Dr. Kim's and Purdue's motions for summary judgment (ECF Nos. 66-1 and 67-1), along with the corresponding paragraphs in Plaintiff's Statement of Additional Material Facts relative to Defendant Mamoru Ishii's motion for summary judgment (ECF No. 68-1); and (iii) any reference to the stricken material as may be contained in Plaintiff's responsive briefings (ECF Nos. 66, 67, & 68).

### ARGUMENT

Plaintiff failed to convince her employer, Purdue University, to offer her a tenured position within the School of Nuclear Engineering. Because of her subjective disagreement with this outcome, she has asserted a baseless claim of discrimination against Dr. Kim under Section 1983. The undisputed facts demonstrate that Dr. Kim harbored no discriminatory animus against Plaintiff, and that Plaintiff's failure to convince Purdue to offer her tenured employment was due to nothing other than her own shortcomings as a candidate. Accordingly, Dr. Kim is entitled to summary judgment.

### I. There is no evidence of any discrimination on the part of Dr. Kim.

As she has done in her other responsive briefings. Plaintiff has eschewed the *McDonnell-Douglas* framework. *See* ECF No. 67, Plaintiff's Memorandum of Law in Opposition to Defendant Seungjin Kim's Motion for Summary Judgment ("Pl.'s Response to Kim") p. 3. And, as is the case elsewhere, Plaintiff's response to Dr. Kim's motion for summary judgment is woefully insufficient. *See* Purdue's Reply p. 3. Regardless of whether this Court analyzes Plaintiff's claims under *McDonnell-Douglas* or any other framework, Plaintiff has failed to meet her burden of establishing a triable question in order to avoid summary judgment.

#### *A. There is no evidence that Dr. Kim harbored any discriminatory animus against Plaintiff.*

In order to avoid summary judgment, Plaintiff was required to provide evidence that Dr. Kim "intended to discriminate on the basis of a protected class." *Sandra T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir. 2010) (citing *Ashcroft v. Iqbal,*

556 U.S. 662, 676-77 (2009)). She has failed to do so. Plaintiff has pointed to no evidence whatsoever that would support an inference of any discriminatory animus. Instead, and in an effort to create a question where none exists, Plaintiff resorts to nothing less than grossly misrepresenting the record.

Plaintiff first points to an alleged statement by Dr. Kim that Plaintiff "will never get tenure in this department." Pl.'s Resp. to Kim p. 4. On its face, this alleged statement is not connected in any way to Plaintiff's membership in any protected class. Rather, the alleged statement is consistent with Dr. Garner's evaluation, made to Dr. Hassanein in 2014 before Purdue had even hired Dr. Sizyuk, that "[Dr. Sizyuk] will want to be very careful to make sure that she develops projects that are independent of" Dr. Hassanein's research center. ECF No. 61-2, Purdue's Statement of Material Facts ("Purdue's SOF") ¶¶ 20 & 21. By the time Dr. Kim arrived three years later, it was readily apparent that Dr. Sizyuk (and Dr. Hassanein) had ignored Dr. Garner's advice and forecast.

Nevertheless, Plaintiff baldly asserts that Plaintiff "knew nothing of Dr. Sizyuk other than her gender and non-affiliation with the Asian race and national origin. He knew nothing about her qualifications and future capacity for tenure[.]" *Id.* Plaintiff cites no testimony or other evidence as to what Dr. Kim knew about Dr. Sizyuk as of 2017. At the very least, Dr. Kim knew that Plaintiff was a tenure-track faculty member who had been hired by Dr. Kim's predecessor, Dr. Hassanein, and who worked in Dr. Hassanein's research center at Purdue. Further, Dr. Sizyuk's publications with Dr. Hassanein were public record information, as was her

4

prominent public affiliation with him.[1] Regardless, Dr. Kim's alleged evaluation of Plaintiff is not sufficient to create a triable question. *See Haynes v. Ind. Univ.*, 902 F.3d 724, 734 (7th Cir. 2018) (refusing to find bias where a department chair "recommended critical and unqualified external reviewers," wrote a report suggesting only "tepid" support for the candidate, and "expressed animosity towards [the candidate] both in person and in correspondence with other faculty members").

Much more egregiously, Plaintiff falsely claims that Dr. Kim stated that "women 'serve' senior faculty." Pl.'s Resp. to Kim p. 5. Plaintiff claims that this is a "biased statement . . . based on outdated stereotypes concerning the roles of women in the workplace[.]" *Id.* pp. 5-6. Yet there is no evidence that Dr. Kim ever made such a statement—Plaintiff's allegation that Dr. Kim believes that "women 'serve' senior faculty" is cut from whole cloth. While the *actual* statement that Dr. Wharry attributed to Dr. Kim does not appear in the evidence cited by Plaintiff, it is possible that Plaintiff may have been attempting to cite Dr. Wharry's (rather than Dr. Kim's) deposition. Dr. Wharry's testimony was that Defendant Mamoru Ishii had "suggested that [Dr. Wharry] be the note-taker" at a meeting in which she was the only nontenured faculty present. *See* ECF No. 69-8, Pl.'s Ex. 8, Wharry Dep. 42:6-18 & 43:16-18. Dr. Wharry claims that, when she brought this to Dr. Kim's attention, Dr. Kim stated that "*as a junior professor* [Dr. Wharry] should serve [the]

---

[1] Plaintiff also attempts to draw comparisons between herself and Dr. Yunlin Xu, but Dr. Xu is not an appropriate comparator in this context, *see* Purdue's Reply pp. 11-12, and these purported comparisons need not be considered.

senior faculty[.]" *See* ECF No. 74-3, Purdue's Ex. V, Wharry Dep. 69:13-70:2. No inference of bias can be drawn from these alleged statements.[2]

These two alleged statements mark the beginning and the end of Plaintiff's proffered "evidence" of Dr. Kim's alleged animus. In other words, Plaintiff has no evidence. The record instead shows that Dr. Kim concurred in the NEPC's evaluation that Plaintiff had not established her independence. This concern was raised repeatedly and by numerous individuals, starting before Plaintiff even became a tenure-track faculty member. *See* ECF No. 61-1, Purdue's Brief in Support of its Motion for Summary Judgment ("Purdue's Br.") pp. 3-5. "A widely shared opinion like this, consistent over a significant period of time, strongly supports the . . . proffered reason for tenure denial." *Maras, v. Curators of the Univ. of Mo.*, 983 F.3d 1023, 1028 (8th Cir. 2020) (citing *Qamhiyah v. Iowa St. Univ. of Sci. & Tech.*, 566 F.3d 733, 745 (8th Cir. 2009)). In response to this, Plaintiff has provided no evidence of pretext. *See* Purdue's Reply pp. 14-19. Accordingly, Dr. Kim is entitled to summary judgment.

### B. There is no evidence that Dr. Kim turned a blind eye toward any alleged discriminatory act.

As Dr. Kim noted in his opening brief, there is no case law support for imposing individual liability on an employee who may have been an unwitting "cat's paw." Plaintiff cites to no authority to dispute this. Instead, Plaintiff attempts to

---

[2] Additionally, this alleged statement has no connection to Plaintiff or to Plaintiff's tenure application. It would at most be a "stray remark that [is] neither proximate nor related to the employment decision" and so is "insufficient to defeat summary judgment." *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007) (citing *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997)).

mix the "cat's paw" theory with a form of supervisory liability. *See* Pl.'s Resp. to Kim p. 4 (incorrectly asserting that "she need only present enough evidence for a jury to conclude that Dr. Kim knew of Dr. Ishii's conduct, facilitated it, approved it, condoned it, or turned a blind eye to it"). In doing so, Plaintiff ignores key guidance from the very cases she cited. Specifically, the Seventh Circuit has held that "after *Iqbal* a plaintiff must also show that the supervisor possessed the requisite discriminatory intent." *Grindle*, 599 F.3d at 588. "[T]his means showing that the supervisor, like the subordinate, intended to discriminate on the basis of a protected class." *Id.* (citing *Iqbal*, 556 U.S. at 676-77).

Thus, Plaintiff cannot hope to prevail on a claim that Dr. Kim merely "turned a blind eye" to any alleged discriminatory act, nor can she prevail on a theory that Dr. Kim—who is not the employer—was a "hapless cat" under her "cat's paw" theory. She must show that Dr. Kim himself harbored and acted upon some discriminatory animus. As discussed in Section I.A, *supra*, Dr. Kim harbored no such bias.

Setting this aside, Plaintiff's proffered "evidence" once again amounts to a blatant misrepresentation of the record. Plaintiff asserts that, in the context of Dr. Wharry's tenure application, Dr. Kim was "confronted with an admission by the decision-maker of unlawful bias against a tenure candidate, along with coercion and influence to vote a certain way, [but] still chose not to endorse Dr. Wharry for review at the EAPC following the NEPC's denial of her tenure." Pl.'s Resp. to Kim pp. 6-7. Presumably, Plaintiff is referring to Dr. Ishii as "the decision-maker." Not

7

only is this factually inaccurate (except inasmuch as Dr. Ishii, as an NEPC member, is able to cast a single vote), but there is no evidence of who voted in what way on Dr. Wharry's tenure application or of anyone's rationale for their respective vote. Further, there is no evidence supporting any alleged "admission . . . of unlawful bias" or that Dr. Kim was informed of any alleged "coercion and influence to vote a certain way[.]" All that the evidence indicates is that Dr. Kim was informed that Dr. Wharry had been asked to take notes in a meeting at which she was the only nontenured faculty. Plaintiff's allegation here is pure fabrication.

Plaintiff next asserts that Dr. Ishii raised concerns about Plaintiff's Ph.D. credential, that Dr. Kim knew these concerns were raised, and that Dr. Kim nevertheless declined to overrule the NEPC. *See* Pl.'s Resp. to Kim p. 7. This theory is belied by Plaintiff's admission that Dr. Kim "categorically" informed the NEPC "that it was the provost's opinion that [Plaintiff's] degree . . . was valid." *See* ECF No. 66, Plaintiff's Memorandum of Law in Opposition to Defendant Purdue University's Motion for Summary Judgment ("Pl.'s Response to Purdue") p. 11. Further, there is no evidence that the issues of Plaintiff's Ph.D. credential or pre-Purdue employment factored into the NEPC's vote. The stated rationale behind the negative tenure vote is silent on those issues. Instead, "[t]he majority of the Primary Committee members felt that Dr. Sizyuk's record . . . was weak, and that Dr. Sizyuk did not show strong evidence in demonstrating independence from her former research advisor[.]" Purdue's SOF ¶ 86. Just as Plaintiff has no evidence that this rationale was a pretext for discrimination, she cannot speculate that the

8

"real" reason she failed as a tenure candidate was that Dr. Ishii had raised questions about her Ph.D.

Moreover, Dr. Kim testified that he concurred with the NEPC, including as to the stated rationale. Plaintiff has no evidence to the contrary and instead advances two equally unavailing arguments. First, Plaintiff asserts that a jury might not believe Dr. Kim's testimony. Pl.'s Resp. to Kim p. 7. This is insufficient to create a triable question. "A properly supported motion for summary judgment cannot be defeated by simply arguing that a jury might not believe a witness's testimony." *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012). Plaintiff's argument is further contradicted by her own admission that Dr. Kim "evaluates employees in an honest and truthful manner." ECF No. 66-1, Plaintiff's Response to Statement of Material Facts ("Pl.'s SOF") ¶ 161. Thus, Dr. Kim's evaluation of Plaintiff as part of the tenure decision process—which led to his concurrence with the NEPC vote and rationale—was also "honest and truthful."

Second, Plaintiff points to her own alleged qualifications for the remarkable proposition that "any objective review of Dr. Sizyuk's dossier would mandate that Dr. Kim endorse her for review at the EAPC." Pl.'s Resp. to Kim p. 8. As discussed at length in Section I.D of Purdue's reply brief, *see* Purdue's Reply pp. 14-19, Plaintiff's argument here demonstrates that this case is nothing more than an "academic disagreement" that cannot survive summary judgment.

In sum, then, there is no evidence that Dr. Kim harbored any discriminatory animus against Plaintiff, and there is no theory under which Dr. Kim could be liable

9

for anyone else's alleged acts of discrimination. Dr. Kim is therefore entitled to summary judgment.

## II. Dr. Kim is entitled to summary judgment because Plaintiff has not brought a bona fide individual capacity claim.

Plaintiff has made the conclusory argument that she "is suing Dr. Kim only in his personal and individual capacity[.]" Pl.'s Resp. to Kim p. 10. Despite this, Plaintiff once again characterizes her claim as being based on Purdue's "refusal to form a tenured employment contract[.]" *Id.* There is nothing to suggest that Dr. Kim would have personally been a party to a contract between Dr. Sizyuk and Purdue. This is precisely why Plaintiff's claim is not a bona fide individual capacity claim. *Cf. Isabell v. Trs. Of Ind. Univ.*, 432 F. Supp. 3d 786, 795 (N.D. Ind. 2020) (declining to find immunity where the defendant university "point[ed] to no employment contract (past or prospective), salary, benefits, or other measures of recovery that would necessarily implicate the state"). Plaintiff here has repeatedly pointed to a prospective employment contract.

Further, Plaintiff does not dispute that her prayed-for remedy includes that all "Defendants pay to Plaintiff all of her lost wages and benefits" and "any additional lost wages, bonuses, compensation, and monetary loss." ECF No. 27, Am. Compl. p. 18. Thus, she is demanding that Dr. Kim be answerable for damages calculated on the basis of her employment with Purdue. Her claim against Dr. Kim is properly viewed as an official capacity claim, and it is barred both by the Eleventh Amendment and because Dr. Kim in his official capacity is not a "person" under Section 1983. Dr. Kim is therefore entitled to summary judgment.

## CONCLUSION

For each and all of the foregoing reasons, and for all of the reasons stated in Dr. Kim's opening brief, Defendant Seungjin Kim respectfully requests that the Court grant his Motion for Summary Judgment as to all claims.


Dated: April 5, 2022                                  Respectfully submitted,

/s/ Matthew M. Humble
William P. Kealey
Matthew M. Humble
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
Phone:  765.423.1561
E-Mail: wpk@stuartlaw.com
            mmh@stuartlaw.com
            snd@stuartlaw.com
***Attorneys for Dr. Seungjin Kim***

1489235