UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| TATYANA SIZYUK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO.:   4:20-cv-00075-TLS-JPK |
| v. | ) | |
| | ) | |
| PURDUE UNIVERSITY, BOARD OF | ) | |
| TRUSTEES OF PURDUE UNIVERSITY, | ) | |
| SEUNGJIN KIM and MAMORU ISHII, | ) | |
| in their personal capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANT DR. MAMORU ISHII'S MOTION FOR SUMMARY JUDGMENT

"Satisfactory performance as  an  assistant professor does  not  entitle  anyone to promotion. Universities prune the ranks—sometimes ruthlessly, so that only the best rise." *Kuhn v. Ball State University*, 78 F.3d 330, 331 (7th Cir. 1996).

Plaintiff Dr. Tatyana Sizyuk is understandably disappointed at learning that she was not granted tenure at the Purdue University School of Nuclear Engineering. Unfortunately, she seeks to blame Defendant Dr. Mamoru Ishii, and has baselessly accused him of having thwarted her aspirations because of her race and sex.  But no admissible evidence supports her accusations.  For this reason, Dr. Ishii asks the Court to enter summary judgment on his behalf with respect to Dr. Sizyuk's Section 1983 claim against him.

**1.      No evidence supports Dr. Sizyuk's claim against Dr. Ishii.**

Relying on *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), Dr. Sizyuk

states that "[U]nless the Plaintiff limits her methodology of proof to the indirect *McDonnell Douglas* burden shifting framework, the Seventh Circuit no longer distinguishes between 'direct' and 'indirect' evidence."[1]  Rather, the question is "'simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity…or other proscribed factor caused the discharge or other adverse employment action.'"[2]

The Seventh Circuit Court of Appeals has clarified that "While *McDonnell Douglas* is sometimes 'referred to as an "indirect" means of proving employment discrimination,' it says nothing about how to assess different categories of evidence." *Reives v. Illinois State Police*, _____ F.3d \_,[3] 2022 WL 966871, \*3 (7th Cir. March 31, 2022) (quoting *Ortiz* at 766).  Thus, *McDonnell Douglas* "'remains an efficient way to organize, present, and assess evidence in discrimination cases.'"  *Id*. (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)).  Moreover, in order to make a prima facie case of sex discrimination without resorting to the *McDonnell Douglas* burden-shifting framework, "[A] plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination."  *Joll v. Valparaiso Community Schools*, 953 F.3d 923, 930 (7th Cir. 2020) (quoting *Coffman v. Indianapolis Fired Dep't*, 578 F.3d 559, 563 (7th Cir. 2009)).

---

[1] Plaintiff's Response in Opposition, Docket No 68, p. 3.

[2] *Id*., quoting *Ortiz* at 765.

[3] Only the Westlaw citation for this case is currently available.

### 1.1. Dr. Sizyuk has produce no evidence that supports an inference of intentional discrimination by Dr. Ishii.

Dr. Sizyuk purports to show Dr. Ishii's "unlawful bias" by designating deposition or declaration testimony of potential witnesses who claim to have heard Dr. Ishii make unflattering remarks about women and/or American students.[4]  She identifies no statements that were directed to her personally or that were made in reference to the process for consideration of her application for tenure and promotion.

The Seventh Circuit Court of Appeals has explained that "Remarks can raise an inference of discrimination when they are '(1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.'"  *Bagwe v. Sedwick Claims Management Services, Inc.*, 811 F.3d 866, 885 (7th Cir. 2016) (quoting *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2001)).

Here, Dr. Ishii was not "the decision-maker" with respect to whether Dr. Sizyuk would obtain tenure.  As explained in Dr. Ishii's Brief in Support of Motion for Summary Judgment[5] and in Purdue University's Reply in Support of Motion for Summary Judgment,[6] as a member of the Nuclear Engineering Primary Committee (the "NEPC"), all Dr. Ishii could do is case a single vote as to whether the NEPC would *recommend* Dr. .Sizyuk for tenure.  Neither Dr. Ishii nor the NEPC had the authority to *grant* tenure to Dr. Sizyuk.

---

[4] Dr. Ishii denies that he made such statements.  See Exhibit 11, Second Declaration of Dr. Mamoru Ishii.
[5] Docket No. 63.
[6] Docket No. 74.

Dr. Sizyuk contends that Dr. Ishii exercised so much control over other faculty members that he was able to shape the outcome of the NEPC's vote.[7]   Eight members of the NEPC voted on Dr. Sizyuk's candidacy for tenure: Dr. Ishii, Dr. Revankar, Dr. Choi, Dr. Khalik, Dr. Lopez-de-Bertodano, Dr. Tsoukalis, Dr. Taleyarkhan, and Dr. Garner.  Dr. Sizyuk offers no evidence whatsoever that Dr. Ishii did anything to influence the votes of his fellow NEPC members with respect to her candidacy beyond stating his opinion during NEPC meetings.[8]

Dr. Sizyuk's assertion that Dr. Ishii somehow decides who gets to advance within the NEPC and who doesn't is based entirely on the inadmissible opinion and speculative testimony of Dr. Taleyarkhan and Ms. Randler.  She has failed to offer admissible evidence that Dr. Ishii is capable of controlling the recommendation of the NEPC, let alone that he is capable of controlling the ultimate decision on whether she was to be granted tenure.  Indeed, she asserts that the person who had the ultimate authority to present her case to the EAPC for review,[9] Dr. Kim, evaluates employees "in an honest

---

[7] Response Brief, Docket No. 68, pp. 11-14.
[8] Dr. Sizyuk has designated the deposition testimony of Dr. Wharry that she overheard a conversation in which Dr. Ishii told Dr. Revankar that because Dr. Ishii supported him in the past, Dr. Revankar was now obligated to vote the way Dr. Ishii wanted him to.  Even if this testimony were credited (and Dr. Ishii disputes it), that conversation had nothing to do with the vote on Dr. Sizyuk's application for tenure.  To the extent that Dr. Wharry claims that Dr. Ishii generalized about candidates based on their nationality during that conversation, she claims that he generalized about "Americans" being lazy, not that he expressed prejudice toward white people or women.  While Dr. Sizyuk is "American" (as is Dr. Ishii), she does not claim that she was discriminated against on that basis.
[9] Likewise, Vice Provost Peter Hollenbeck could have moved her case forward to the EAPC as well.

and truthful manner."[10]  If we accept Dr. Sizyuk's own position with respect to Dr. Kim, then how could an erroneously negative recommendation by Dr. Ishii's cause her to fail to obtain tenure?  Presumably, Dr. Kim's practice of evaluating employees in an "honest and truthful manner" would have overridden any unfounded opposition by Dr. Ishii.

Moreover, Dr. Sizyuk identifies no statement by Dr. Ishii around the time that the NEPC voted on whether to recommend her for tenure, and no statement of "unlawful bias" at all by Dr. Ishii in connection with his vote as a member of the NEPC on Dr. Sizyuk's tenure.  The remarks that she attributes to Dr. Ishii are the epitome of "stray remarks" – remarks that played no part in the decision-making process.

Dr. Sizyuk's reliance on *Joll v. Valparaiso Community Schools* in this regard is misplaced.  While the Court of Appeals found that the derogatory remarks at issue could be admissible evidence of unlawful discrimination against the plaintiff, those remarks were made during the course of the decision-making process regarding the plaintiff's potential employment.  *Joll* at 930-31.  The same is true of the derogatory statements addressed in *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 632 (7th Cir. 1996); they were not remarks about other women, but actually an explanation of why the plaintiff was not promoted ("you know, as we all know, they wanted men in these positions…").  *Id.* at 632.

None of those circumstances is present here.  The statements that Dr. Sizyuk attributes to Dr. Ishii were not made during the course of or relating to the NEPC's

---

[10] Dr. Sizyuk's Statement of Additional Material Facts, Docket No. 68-1, ¶ 68.

decision on her tenure application.  Nor were they allegedly made in explaining why the

NEPC voted against recommending tenure.

Given that the expressions of "unlawful bias" that Dr. Sizyuk attributes to Dr. Ishii

are nothing more than stray remarks, she has failed to adduce any evidence that Dr. Ishii

bears animus against her because of her race, nationality, or sex.

### 1.2. Dr. Sizyuk cannot prevail under the *McDonnel Douglas* burden-shifting framework.

Though Dr. Sizyuk does not explicitly address the evidence in the context of the

*McDonnell Douglas* framework in her Response Brief, she does so implicitly by arguing

that (1) she was qualified for tenure and (2) a similarly situated, non-female, non-white

candidate was granted tenure;[11] these arguments correspond to the second and fourth

prongs, respectively, of the prima facie case that a plaintiff must show in the *McDonnell*

*Douglas* framework.

#### 1.2.1.  Dr. Sizyuk cannot identify a similarly situated comparator.

Dr. Sizyuk identifies Dr. Kim and Dr. Yunlin Xu as similarly situated comparators.

But Dr. Xu has not even been considered for tenure;[12] thus, he cannot be a comparator for

purposes of a discrimination claim based on denial of tenure.  And Dr. Kim was not being

evaluated for a similar position; rather, he was hired to become the head of the School of

Nuclear Engineering.[13]  In sum, Dr. Sizyuk has failed to identify any similarly situated

---

[11] Dr. Sizyuk's Response in Opposition, Docket No. 68, pp. 14-19, 21-23.
[12] *Id.*, p. 22.
[13] Dr. Sizyuk's Statement of Additional Material Facts, Docket No. 68-1, ¶ 127.

comparators at all.[14]

### 1.2.2.   Dr. Sizyuk has designated no admissible evidence of pretext.

Because Dr. Sizyuk cannot identify a similarly situated comparator, she has failed

to establish a prima facie case, and Dr. Ishii is entitled to summary judgment on that basis.

But even if she had made out a prima facie case, her claim still fails, as she identifies no

admissible evidence of pretext.

As the Seventh Circuit Court of Appeals observed in *Sun v. Board of Trustees of*

*University of Illinois*, 473 F.3d 799 (7th Cir. 2007), pretext allegations are "inextricably

intertwined" with the second prong of the *McDonnell Douglas* prima facie case test, that

is, whether the applicant is qualified for the position.  *Id*. at 814.  It is true, as Ms. Sizyuk

points out,[15] that the Seventh Circuit Court of Appeals has not adopted a heightened

pleadings standard for the qualification prong of the *McDonnell Douglas* prima facie case

test for cases involving denial of tenure.  Nonetheless, the Seventh Circuit has stated that

in evaluating a claim of pretext, "This court has recognized that tenure cases require

something more than mere qualification; the department must believe the candidate has

a certain amount of promise."  *Sun* at 815 (citing *Namenwirth v. Bd. of Regents of Univ. of*

*Wis. Sys.*, 769 F.2d 1235, 1242 (7th Cir. 1985).  Likewise, the Seventh Circuit Court of

Appeals has explained that, "Satisfactory performance as an assistant professor does not

---

[14] Dr. Sizyuk also purports to present evidence of "Me Too" comparators, that is, candidates who were not of Asian ancestry, were female, or both.  Response Brief, No. 68, p. 19.  But she fails to identify the purported qualifications of each person or the recommendation that Dr. Ishii made with respect to each person.  Thus, her "Me Too" comparators are simply irrelevant to her claim against Dr. Ishii.
[15] Response Brief, Docket No. 68, p. 14.

entitle anyone to promotion. Universities prune the ranks—sometimes ruthlessly, so that only the best rise." *Kuhn v. Ball State University*, 78 F.3d 330, 331 (7th Cir. 1996).

Stated otherwise, it may be true that Dr. Sizyuk's burden with respect to showing qualification "is not a heavy one"[16] in the sense that she may meet the minimum qualifications for tenure at *some* university *somewhere* in the world.  But that does not mean that she is entitled to tenure at Purdue University's School of Nuclear Engineering, or that the University's denial of tenure (or anyone's recommendation of that denial) must necessarily be a pretext for prejudice based on race and sex.  Purdue is entitled to "prune its ranks" so that even among the minimally qualified, "only the best rise."  And Dr. Ishii, as a member of the NEPC, is entitled, if not obligated, to play an appropriate role in that process.

The admissible evidence before the Court shows that is exactly what happened here.  Understandably, Dr. Sizyuk does not like it; probably no one ever liked being denied tenure.  But that does not mean that she is the victim of discrimination based on race or gender.  Indeed, no admissible evidence shows that she was.

**2.     Conclusion**.

Dr. Sizyuk has designated no admissible evidence that Dr. Ishii based his recommendation on intentional discrimination based upon her race or gender. Moreover, she has designated no admissible evidence that would enable her to show either a prima facie case of discrimination or pretext under the McDonnell Douglas

---

[16] Response Brief, Docket No. 68, p. 15.

framework.  For this reason, Dr. Mamoru Ishii respectfully moves the Court to enter summary judgment in his favor with respect to Dr. Sizyuk's claims against him, and to grant him all other just and proper relief.


Respectfully submitted,


*/s/ J. Neal Bowling*
J. Neal Bowling (Attorney No. 19278-41)
Janelle P. Kilies (Attorney No. 30708-49)
LEWIS WAGNER, LLP
Suite 200
501 Indiana Avenue
Indianapolis, IN 46202
Email     nbowling@lewiswagner.com
          jkilies@lewiswagner.com

**Attorneys for Defendant Dr. Mamoru Ishii**

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, a copy of the foregoing was served on the following parties electronically by using the Court's IEFS System and U.S. Postal Service, pre-paid delivery for those parties not yet registered:

Ryan P. Sink
FOX WILLIAMS & SINK, LLC
6177 North College Ave.
Indianapolis IN 46220
rsink@fwslegal.com
*Counsel for Plaintiff*

William P. Kealey
Matthew M. Humble
Sarah D. Dimmich
STUART & BRANIGIN LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
wpk@stuartlaw.com
mmh@stuartlaw.com
snd@stuartlaw.com
*Counsel for Defendants Purdue University, Board of Trustees of Purdue University, and Seungjin Kim*

*s/ J. Neal Bowling*
J. Neal Bowling

LEWIS WAGNER, LLP
Suite 200
501 Indiana Avenue
Indianapolis, IN 46202
Telephone:    317-237-0500
Facsimile:    317-630-2790
nbowling@lewiswagner.com