UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TATYANA SIZYUK | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO.: 4:20-cv-00075-TLS-JPK |
| v. | ) |
| | ) |
| PURDUE UNIVERSITY, BOARD OF | ) |
| TRUSTEES OF PURDUE UNIVERSITY, | ) |
| and MAMORU ISHII, in his personal | ) |
| capacity, | ) |
| | ) |
| Defendants. | ) |

**JOINT MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO RULE 50(a), FEDERAL RULES OF CIVIL PROCEDURE,
BY ALL DEFENDANTS**

Plaintiff Tatyana Sizyuk relies upon the "cat's paw" theory to prove her claim that she was denied tenure due to discrimination based on her race and gender.[1] Specifically, Dr. Sizyuk contends that Dr. Ishii, motivated by race and gender prejudice, called into question before the Purdue University Nuclear Engineering Primary Committee (the "NEPC") the validity of her Ph.D. and the accuracy of her description of her prior work experience at Argonne National Laboratory.[2] She further contends that Dr. Ishii's comments caused five other members of the NEPC to vote to recommend that she not be granted tenure, thus yielding a six-to-two negative vote and resulting in the ultimate

---

[1] Plaintiff's March 22, 2022 Memorandum of Law in Opposition to Defendant Purdue University's Motion for Summary Judgment, Docket No. 66 (Plaintiff's MSJ Opp.), pp. 7-8.
[2] Plaintiff's MSJ Opp., p. 11.

denial of tenure.[3]

Proof of causation is required for a cat's paw theory of relief. Plaintiff's case-in-chief has three terminal gaps in her proof that race and gender discrimination caused her employer, Purdue University, not to promote her to a tenured professorship.

First: Dr. Sizyuk failed to present any evidence that a single one of the NEPC members who voted against recommending tenure were decisively influenced by any statement or action by Dr. Ishii.[4] Thus, her cat's paw theory must fail as a matter of law. Moreover, the evidence in Plaintiff's case in chief shows that voting members of the NEPC scrutinized information that she asked them to consider by including it in her complete dossier. Several made their own reasonable inquiry which revealed misleading information in the dossier on one of the most important criteria for a tenure candidate—her independence from her doctoral advisor.[5] Finally, the NEPC conducted its own investigation of any question concerning her Ph.D. and her title for her prior work experience, thereby breaking any chain of proximate causation between Dr. Ishii's statements and the ultimate vote.[6]

---

[3] Plaintiff's MSJ Opp., p. 8. It is undisputed that the NEPC was not the final decision-maker with respect to Dr. Sizyuk's tenure application; rather, the NEPC's vote resulted only in a recommendation that successive committees in Purdue's academic hierarchy consider Dr. Sizyuk's tenure dossier. Nonetheless, because Dr. Sizyuk bases her cat's paw theory on the allegation that Dr. Ishii influenced the NEPC vote, a complete lack of evidence that Dr. Ishii did so is fatal to her claims.

[4] "To prevail on his cat's paw theory, [plaintiff] has to show that [the decision-maker's] decision was "decisively influenced by someone who *was* prejudiced." *Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 865 (7th Cir. 2016) (internal quotation omitted).

[5] See Pl Ex. M.

[6] See Pl. Ex. M; See Footnote 18, infra.

Second: The testimony shows that Dr. Kim advised Plaintiff as early as 2017 that her failure to move away from Dr. Hassanein in her research and publications would harm her tenure candidacy. There is no evidence that Dr. Kim's strongly held opinion was anything other than his own, in 2017 and all subsequent times. There is no evidence that Dr. Ishii influenced Dr. Kim's opinion regarding Plaintiff's lack of independence. It is therefore impossible for the jury to conclude that Dr. Ishii influenced Dr. Kim's decision not to forward Plaintiff's tenure dossier to the EAPC.

Third: Plaintiff has not offered evidence from which the jury could conclude that, but for conduct of Dr. Ishii, Purdue University (the employer) would have promoted Plaintiff to a tenured professorship.[7] The Nuclear Engineering Primary Committee (NEPC) did not have the power to promote Plaintiff to a tenured professorship. The NEPC could only send Plaintiff's tenure dossier to the Engineering Area Primary Committee (EAPC) with the concurrence of the Head of the Department. Plaintiff has presented nothing more than speculation that, if the NEPC had done so, and if Dr. Kim had done so, that the EAPC would have voted in favor of referring it up to the next committee level in the University's hierarchy of tenure evaluation.

Because the jury would have no legally sufficient basis to find in her favor, Defendants The Trustees of Purdue University (misidentified in the caption as "Purdue

---

[7] The but-for causation requirement applies to a cat's paw theory of relief. *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 381 (7th Cir. 2011) (endorsing instruction that "the Park District would not have terminated Ms. Schandelmeier-Bartels had she been non-Caucasian but everything else about Ms. Schandelmeier-Bartels had been the same.").

University" and its "Board of Trustees")[8] and Dr. Mamoru Ishii jointly move the Court pursuant to Rule 50(a) of the Federal Rules of Civil Procedure to enter judgment dismissing the case.

**1.     Rule 50 standard.**

Rule 50(a) of the Federal Rules of Civil Procedure provides:

**(a)     Judgment as a Matter of Law.**

>   **(1)     *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>>   **(A)     resolve the issue against the party; and**
>>
>>   **(B)     grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.**
>
>   **(2)     *Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Rule 50(a) "authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case."  Fed.R.Civ.P. 50 advisory committee note.  The Rule "authorizes the court to consider a motion for judgment as a matter of law as soon as a party has completed a presentation on a fact essential to that

---

[8] Indiana Code § 21-23-2-3.

party's case. Such early action is appropriate when economy and expedition will be served." *Id.*

**2.     Dr. Sizyuk's claims fail as a matter of law.**

Dr. Sizyuk did not merely fail to present evidence sufficient to support her claims (though she did indeed fail to do so); she affirmatively negated her cat's paw theory against Purdue. Because her claim against Dr. Ishii must also fail as a matter of law if her cat's paw theory against Purdue fails, the Court should enter judgment on her claims against Dr. Ishii as well as on her claim against Purdue.

**2.1.    The cat's paw theory.**

The "cat's paw" theory permits an employment discrimination plaintiff to recover where the ultimate decision-maker him- or herself was not biased, but was influenced by another employee, often a supervisor, who was prejudiced against the plaintiff on the basis of race, sex, or another legally prohibited category. As the Seventh Circuit Court of Appeals has explained, the theory enables a plaintiff to establish "a link between an employment decision made by an unbiased individual and the impermissible bias of a non-decision-making co-worker…" *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011). "*With sufficient evidence*, we permit juries to draw an inference that another employee's impermissible bias infected a decision when a plaintiff is able to show that the biased employee had some degree of influence over the ultimate decision." *Id.* (emphasis added). Simply put, the evidence presented during Plaintiff's case in chief is insufficient to permit such an inference.

5

This holding requires the Plaintiff to show a chain of causation that "infected" the paw of "the ultimate decision[-maker]." Consistent with this requirement, this Court's summary judgment ruling states: "Under the cat's paw theory, the Plaintiff must also prove that Dr. Ishii's discriminatory animus proximately caused Purdue's decision to deny her tenure application." (DE 77 p. 30). Plaintiff must adduce sufficient evidence for the jury to find a chain of causation for the decision of *Purdue*, as her employer.

However, even if a biased employee attempts to infect a decision, the chain of proximate causation is broken if the decision-maker conducts his or her own investigation of the biased employee's statement. "Under any formulation of the cat's paw standard, the chain of causation can be broken if the unbiased decisionmaker conducts a meaningful and independent investigation of the information being supplied by the biased employee." *Schandelmeier-Bartels* at 383. See also *Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908, 918 (7th Cir. 2007) (explaining that "[W]here a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker").

The cat's paw theory requires "blind reliance" by the decision-maker on the statements of the biased employee. *Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009), *reversed on other grounds*, 562 U.S. 411 (2011). Because an independent investigation by the decision-maker necessarily departs from "blind reliance" on the statements of the bad actor, such an investigation breaks the chain of causation.

Moreover, the decision-maker's investigation need not be perfect in order to break the chain of causation. So long as the decision-maker does not rely entirely on the information supplied by the biased employee (i.e., the "monkey" in the cat's paw theory), but independently investigates the relevant facts apart from the faulty information supplied by the biased employee, the chain of proximate causation is broken:

> [T]he decisionmaker need not be "a paragon of independence." An employer may avoid cat's-paw liability if "the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." So long as "the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action … the employer will not be liable."

*Sinha v. Bradley University*, 995 F.3d 568, 574 (7th Cir. 2021) (internal citations omitted).

### 2.2. Dr. Sizyuk's cat's paw theory fails as a matter of law.

Dr. Sizyuk bears the burden of proof with respect to her claims. She "must provide 'more than a mere scintilla of evidence of proximate cause and may not rely on conjecture or speculation' to justify submission of an issue to the jury." *Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 8 (1st Cir. 1998) (citing *Katz v. City Metal Co.*, 87 F.3d 26, 28 (1st Cir. 1996)). See also *Lexington Insurance Company v. Horace Mann Insurance Company*, 861 F.3d 661, 672 (7th Cir. 2017) (explaining that "mere speculation…cannot defeat a judgment under Rule 50(a)").

In particular, speculation about alleged influence by Dr. Ishii on any NEPC voter's decision is insufficient as a matter of law. *Houlihan v. City of Chi.*, 871 F.3d 540, 554 (7th Cir. 2017) ("At any rate, the plaintiffs' evidence amounts to nothing more than

speculation that Thompson influenced McCarthy's decision. And speculation cannot defeat summary judgment. *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Accordingly, the district court properly dismissed Nolan's, Olson's, and Roman's claims.").

In turn, such speculation regarding Purdue University's promotion decision is also insufficient as a matter of law. As noted above, there must be evidence from which the jury could permissibly draw an inference that Dr. Ishii, acting from discriminatory animus, influenced "the ultimate decision" of the employer, Purdue University, not to promote Plaintiff to a tenured professorship. Plaintiff has adduced no such evidence.

### 2.2.1 No evidence of Ishii's influence on any other NEPC no-voter.

Other than Dr. Ishii,[9] Dr. Sizyuk failed to present testimony from a single member of the NEPC who voted against recommending her for tenure. Even Plaintiff's witness Dr. Allen Garner testified that he did not know what, if any, influence Dr. Ishii had on others who voted on Dr. Sizyuk's tenure. Thus, Dr. Sizyuk has completely failed to present any evidence that any statement by Dr. Ishii was a proximate cause for any negative vote by any member. Dr. Sizyuk may not predicate her cat's paw theory on the bare allegation that Dr. Ishii is influential within the School of Nuclear Engineering and thus *may* have exercised some influence over the NEPC; such testimony fails to move beyond mere speculation, which courts have made clear cannot defeat a motion made

---

[9] Ishii Testimony Transcript, 60:11-16 (Dr. Ishii explained that he bears no animus whatsoever against anyone, including Dr. Sizyuk, on the basis of race or sex, and that no statement he made during the NEPC deliberations was motivated in any way by any such animus).

8

pursuant to Rule 50(a). *Lexington Insurance Co.* at 672. Because Dr. Sizyuk has completely failed to offer any evidence whatsoever that Dr. Ishii influenced any other member of the NEPC with respect to the member's vote on Dr. Sizyuk's tenure application, proximate causation has not been established and her cat's paw theory fails as a matter of law.

Even more, the testimony presented during Plaintiff's case in chief has negated her cat's paw theory. Witness Kim, who was called by Plaintiff and has personal knowledge of the NEPC deliberations testified that it was not Dr. Ishii but Dr. Shripad Revankar and other NEPC members who first raised questions about the accuracy of Dr. Sizyuk's dossier, namely, how she could have obtained a Ph.D. from a university in Poland while working full-time at Purdue and whether she had correctly identified her research advisor as Dr. Tralle of the University of Rzeszow.[11] Dr. Kim communicated these questions to the Office of the Provost.[12] In response, Vice-Provost Peter Hollenbeck explained to Dr. Kim that Dr. Sizyuk did indeed earn her Ph.D. from the University of Rzeszow in Poland even though she did not enroll in courses there by submitting her prior research with Dr. Hassanein in the form of a thesis, and that this practice, though unacceptable at universities in the United States, was permitted by the University of Rzeszow.[13] Dr. Kim then relayed this information to the members of the NEPC.[14]

Moreover, Vice-Provost Hollenbeck found that Dr. Sizyuk had misrepresented the identity of her research advisor as Dr. Tralle when in fact her research advisor was Dr.

---

[11] Def's Ex. M (PU-SIZYUK 022930 - 022937). Kim Testimony Transcript, 49:2-7.
[12] See Def's Ex. M; Kim Testimony Transcript, 35:24 - 36:17
[13] Id.
[14] Id.

Hassanein.[15] Vice-Provost Hollenbeck ordered Dr. Sizyuk to correct this "glaring omission" in her dossier and identify Dr. Hassanein as her research advisor.[16]

Plaintiff has stipulated that these questions and conclusions were well-founded: In the Pretrial Order (DE 86), Stipulation 7 is: "Dr. Hassanein, being the director of CMUXE, was the co-author of all of the research reported in Plaintiff's Ph.D. thesis." Stipulation 8 is: "Dr. Hassanein was the research advisor for Plaintiff's Ph.D."

Thus, the evidence establishes that Dr. Ishii did not infect the NEPC's evaluation of the tenure dossier. By scrutinizing the accuracy of the dossier regarding Plaintiff's Ph.D., the NEPC was performing its duty, by evaluating the very information that Plaintiff put forward. There is no dispute that Purdue expected all voting members of the NEPC (including Dr. Ishii) to closely evaluate that information. The NEPC obtained an explanation as to how Dr. Sizyuk could have obtained a Ph.D. from the University of Rzeszow in Poland while she was employed full-time at Purdue, and Dr. Sizyuk was ordered to correct her misrepresentation as to the identity of her research advisor. The questions about her Ph.D. were thoroughly and correctly resolved because the accuracy of a resume is inherently important, not because of any "infecting" input by Dr. Ishii.

The question about the true identity of Dr. Sizyuk's research advisor, even if had come from Dr. Ishii, could not supply the basis for Dr. Sizyuk's cat's paw theory, since that question led to the NEPC seeking and obtaining accurate information concerning the true identity of her research advisor, that is, Dr. Hassanein. "When a decisionmaker

---

[15] See Def's Ex. M.
[16] Def's Ex. N (PU-SIZYUK 022925 - 022926).

solicits accurate information from a subordinate and then makes an independent decision based upon that accurate information alone (and not any recommendation from the subordinate), the cat's paw theory does not apply." *Harris v. Jackson*, No. 1:19-cv-5849-MLB-JKL, 2022 WL 5240396, *23 (N.D. Ga. July 18, 2022). See also *Dickinson v. Edward D. Jones & Co., L.P.*, No. 4:14-cv-397, 2016 WL 4500777, *3 (D. Idaho August 26, 2016) (explaining that there can be no cat's paw liability where information upon which a decision is based "was accurate and was expressly confirmed").

With respect to Dr. Ishii's question as to whether Dr. Sizyuk's dossier had correctly identified her job title at Argonne, Dr. Kim explained that this was a reasonable and fair inquiry since it is vitally important that a tenure candidate's dossier by entirely correct.[17] This reasonableness and fairness is fatal to Dr. Sizyuk's attempt to base her cat's paw theory on Dr. Ishii's question. See, for instance, *Nagle v. Marron*, 663 F.3d 100, 117 (7th Cir. 2011) (explaining that the cat's paw theory must be based on an "improperly motivated" remark).

Moreover, Dr. Taleyarkhan testified that in order to respond to Dr. Ishii's question, he located a job listing from Argonne for a position like that held by Dr. Sizyuk and showed the NEPC that the position did not require a Ph.D.[18] Thus, the NEPC, through Dr. Taleyarkhan, addressed Dr. Ishii's question concerning whether Dr. Sizyuk had correctly described her job title in her dossier.; Dr. Taleyarkhan testified that he "presented [his] findings, and there was no objection." In sum, not only was Dr. Ishii's

---

[17] Kim Testimony Transcript, 39:11-17.
[18] Taleyarkhan Testimony Transcript, 94:21 – 95:6.

11

question entirely reasonable; it could not have been the proximate cause of the NEPC's negative 6-2 vote, as Dr. Taleyarkhan's independent report on the issue broke any possible chain of proximate causation between Dr. Ishii's (entirely legitimate) question and the votes of the other NEPC members.

### 2.2.2 No evidence of Ishii's influence on Dr. Kim's decision.

Dr. Kim testified that, by policy, he had the authority to refer Plaintiff's tenure dossier forward to the EAPC, notwithstanding the negative vote in the NEPC. [19]

Plaintiff has acknowledged that, to prove causation, she would need to show that Dr. Kim himself was manipulated as a paw. Plaintiff argues, "Dr. Kim, who is Dr. Ishii's student and mentor, refused to endorse Dr. Sizyuk for review at the EAPC, in spite of being fully aware of Dr. Ishii repeatedly attacking Dr. Sizyuk's Ph.D. and work history during the NEPC deliberations." (DE 68 p. 24).

Dr. Kim testified that as Head of the Nuclear Engineering Department, Dr. Sizyuk's independence from Dr. Hassanein was a personal concern for him as well. [20] Dr. Sizyuk testified on cross-examination that at annual reviews, the current Head, which includes Dr. Kim, had encouraged her to become more independent several times since Dr. Kim's hiring as Head of Nuclear Engineering. There is no evidence that Dr. Kim's firmly held opinion was anything other than his own. There is no evidence that Dr. Ishii influenced Dr. Kim's opinion regarding Plaintiff's lack of independence. It is therefore

---

[19] Kim Testimony Transcript, 42:7-10.
[20] *Id.* at 43:24 – 44:8.

impossible for the jury to conclude that Dr. Ishii influenced Dr. Kim's decision not to forward Plaintiff's tenure dossier to the EAPC.

Given the evidence adduced in Plaintiff's case-in-chief, it is immaterial whether Dr. Kim's assigned role in the process starts from a presumption of deference to a majority vote of the Primary Committee. Dr. Kim's power to override means that he, not the NEPC, was the authorized gatekeeper to the EAPC. Here, the testimony established that Dr. Kim accurately and independently assessed as early as 2017 that Dr. Sizyuk's research and publication record was deficient on the critical issue of independence from Dr. Hassanein. Dr. Sizyuk never did anything to change Dr. Kim's well-founded perception. Therefore, Dr. Kim had a well-founded basis to conclude that the NEPC's vote was grounded in the substance of Dr. Sizyuk's tenure dossier.

### 2.2.3 No evidence regarding subsequent levels of evaluation.

As noted above, Plaintiff must show causation of *Purdue's* decision to deny her tenure application. Plaintiff's burden is to prove that, but for, Dr. Ishii, Purdue University (the employer) would have promoted her to a tenured professorship. Plaintiff has not presented any evidence or document to show that, but for the negative NEPC vote, her tenure candidacy would have succeeded. The NEPC did not have the power to promote anyone to a tenured professorship. The University was her employer, and only the University could promote her to a tenured professorship.

Plaintiff has presented no evidence to show that, if her dossier had been considered by the EAPC, the EAPC would have voted in favor of referring it to the next committee level in the University's hierarchy of tenure evaluation. Especially since, even

13

now, Plaintiff still refuses to acknowledge the University's expectation of independent research, Plaintiff cannot ask the jury to speculate as to what the EAPC would have done, or what evaluations would have occurred in the subsequent evaluation process if the EAPC had referred Plaintiff's dossier upward in that process.

In light of the complete lack of evidence that Dr. Ishii influenced any voting member of the NEPC to vote against recommending tenure for Dr. Sizyuk; Dr. Kim's decision not to forward Dr. Sizyuk's tenure dossier to the Engineering Area Primary Committee based on his own long-standing concerns and unbiased discretionary evaluation; the lack of any non-speculative showing as to how Dr. Sizyuk's employer, Purdue, would have evaluated her tenure candidacy had it been referred to the EAPC; and, in light of the fact that Dr. Sizyuk's own witnesses affirmatively disproved her cat's paw theory, no justification exists for submitting her claims to the jury, and the Court should enter judgment pursuant to Rule 50(a).

**2.3.    Dr. Sizyuk's claim against Dr. Ishii consequently fails as a matter of law.**

Dr. Sizyuk's claim against Dr. Ishii is that he deprived her of her constitutional rights by causing her to be denied tenure on the basis of her race or gender.[21] Thus, her complete failure to offer evidence that any act or statement by Dr. Ishii resulted in her failure to obtain tenure necessarily defeats her claim against Dr. Ishii. Given that her own evidence establishes that Dr. Ishii's statements were not the cause of the NEPC's

---

[21] Amended Complaint, Docket No. 27, ¶ 46.

recommendation that she not be granted tenure, she has no remaining claim against Dr. Ishii.

### 3. Conclusion.

What was required of Plaintiff to prove her claims in this case has long been clearly established: that Dr. Ishii's discriminatory animus proximately caused Purdue's decision to deny her tenure application. (DE 77 p. 30). She completely failed to offer any evidence that statements by Dr. Ishii, the "monkey" in her cat's paw theory, were in any way a proximate cause of the NEPC's vote to recommend against granting her tenure, or Dr. Kim's decision not to forward her dossier to the EAPC. Nor has she offered anything more than speculation as to whether, but for those procedural events, her employer Purdue University would in fact have awarded her tenure. Moreover, the testimony has negated her cat's paw theory by establishing that the NEPC scrutinized information that she asked them to consider by including it in her complete dossier, and took all reasonable steps which in fact revealed inaccurate information in her dossier.

Because the deficiencies in Dr. Sizyuk's case in chief are so stark, no reason exists to further expend this Court's resources with Purdue and Dr. Ishii's cases in chief and jury deliberations. This is exactly the type of case for which Rule 50(a) exists. For this reason, Purdue and Dr. Ishii respectfully pray that the Court enter judgment for both Defendants on all counts of Dr. Sizyuk's Amended Complaint, and grant them all other just and proper relief.

Respectfully submitted,

| | |
|---|---|
| */s/ J. Neal Bowling* | */s/ William P. Kealey* |
| J. Neal Bowling (Attorney No. 19278-41) | William P. Kealey (Attorney No. 18973-79) |
| Janelle P. Kilies (Attorney No. 30708-49) | Matthew M. Humble (Attorney No. 35259-53) |
| LEWIS WAGNER, LLP | Kirstie E. Klutzke (Attorney No. 38239-79) |
| 1411 Roosevelt Ave., Suite 102 | STUART & BRANIGAN LLP |
| Indianapolis, IN 46201 | 300 Main Street, Suite 900 |
| Email: | P.O. Box 1010 |
| nbowling@lewiswagner.com | Lafayette, IN 47902-1010 |
| jkilies@lewiswagner.com | wpk@stuartlaw.com |
| ***Counsel for Defendant Dr. Mamoru Ishii*** | mmh@stuartlaw.com |
| | kek@stuartlaw.com |
| | ***Counsel for Defendant The Trustees of Purdue University*** |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 25, 2024, a copy of the foregoing was served on the following parties electronically by using the Court's PACER System and by hand delivery in open court:

Ryan P. Sink
Ryan C. Fox
FOX WILLIAMS & SINK, LLC
6177 North College Ave.
Indianapolis IN 46220
rsink@fwslegal.com
*Counsel for Plaintiff*

                                            *s/ J. Neal Bowling*
                                            J. Neal Bowling

LEWIS WAGNER, LLP
1411 Roosevelt Ave., Suite 102
Indianapolis, IN 46201
Telephone:    317-237-0500
Facsimile:     317-630-2790
nbowling@lewiswagner.com